******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## JAMES MITCHELL *v.* COMMISSIONER OF CORRECTION
### (AC 46554)

Elgo, Cradle and Clark, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes, including attempt to commit murder and kidnapping in the first degree, appealed following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claimed, inter alia, that the habeas court abused its discretion in denying his petition for certification to appeal. *Held*:

The habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal to this court, as the claims raised on appeal lacked merit, and the petitioner failed to demonstrate that the habeas court's findings and conclusions were debatable among jurists of reason, that a court could have resolved the petitioner's claims in a different manner, or that there were any questions that deserved encouragement to proceed further.

Argued November 18, 2024—officially released February 4, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland where the court, *Oliver, J.*, granted the respondent's motion for summary judgment as to one count; thereafter, the remaining counts were tried to the court, *Newson, J.*; judgment denying the petition; thereafter, the court, *Newson, J.*, denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *Sharmese Walcott*, state's attorney, and *Erin Stack*, assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, James Mitchell, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal; (2) violated his constitutional right to due process by denying him a full and fair hearing; (3) improperly granted summary judgment for the respondent, the Commissioner of Correction, on his claim that his kidnapping conviction violated the state and federal constitutions because the criminal trial court failed to instruct the jury in accordance with *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008); and (4) erred in concluding that his prior habeas counsel did not provide constitutionally ineffective assistance. We dismiss the appeal.

The following procedural history, as set forth by this court in the petitioner's first habeas action, is relevant to this appeal. "In 2005, following a jury trial, the petitioner was convicted of attempt to commit murder in violation of General Statutes §§ 53a-49 (a), 53a-8 and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, kidnapping in the first degree in violation of General Statutes §§ 53a-8 and 53a-92 (a) (2) (A), conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48 and 53a-92 (a) (2) (A), sexual assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-70 (a) (1), conspiracy to commit sexual assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-70 (a) (1), assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-59 (a) (5), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (5), and criminal possession of a firearm in violation

of General Statutes § 53a-217 (a) (1). The court imposed a total effective sentence of fifty-seven years [of] imprisonment.

"The petitioner appealed from the judgment of conviction to this court, which affirmed the judgment of the trial court. *State* v. *Mitchell*, 110 Conn. App. 305, 955 A.2d 84, cert. denied, 289 Conn. 946, 959 A.2d 1012 (2008). The facts underlying the conviction, as the jury reasonably could have found them, appear in this court's earlier decision: 'On August 23, 2003, following an evening at a nightclub, the victim[1] was dropped off at a friend's house in East Hartford. Wanting to return home, and with her residence too distant to walk, the victim called the [petitioner] for a ride. The victim chose to call the [petitioner] because she knew that Denasha Sanders, the mother of one of the [petitioner's] children, had lived in the same building as the victim and that the [petitioner] was frequently in the vicinity. The [petitioner] and the victim's brother had had a prior confrontation concerning the fact that the victim's brother had dated Sanders. Shortly before August 23, the victim's brother and Sanders had moved to North Carolina with the child of Sanders and the [petitioner].

'"The [petitioner] arrived driving a gold Nissan Altima accompanied by another man, unknown to the victim at the time, but later identified as Travis Hampton. The victim agreed to go with the [petitioner] and Hampton to downtown Hartford to get something to eat. Upon leaving a restaurant, the [petitioner] became violent with the victim, striking her with his cell phone and demanding to know the location of the victim's brother. Out of fear that the [petitioner] would harm her, the

---

[1] "In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e." *Mitchell* v. *Commissioner of Correction*, 156 Conn. App. 402, 405 n.1, 114 A.3d 168, cert. denied, 317 Conn. 904, 114 A.3d 1220 (2015).

victim lied to the [petitioner] and told him that her brother was at her grandfather's house. The victim attempted to leave the car, but the [petitioner] pulled her by the hair and locked the doors. During this time, Hampton remained in the backseat of the vehicle.

'"The [petitioner] subsequently determined that the victim's brother was not at her grandfather's house. He drove the victim and Hampton to his mother's house in Hartford and ordered the victim out of the car. The victim briefly complied and then returned to the vehicle while the [petitioner] and Hampton entered the house. When the [petitioner] and Hampton returned, the three proceeded to leave the area by car. The [petitioner] apologized to the victim for hitting her and offered her marijuana, which she accepted. Instead of driving the victim home, however, the [petitioner] drove to Market Street in Hartford and parked his vehicle. The [petitioner] told the victim he wanted to have sex with her and proposed that they go to a hotel or to Sanders' house.

'"The victim refused and got out of the car, intending to walk home. The [petitioner] produced a shotgun, which he gave to Hampton, who pointed the weapon at the victim's face. The [petitioner] and Hampton told the victim to remove her pants. The victim testified that the [petitioner] raped her vaginally from behind. When the [petitioner] was finished, he forced the victim to perform fellatio on Hampton. The victim complied briefly, and Hampton proceeded to rape her vaginally, while the [petitioner] regained and held the shotgun. The victim grabbed her pants and yelled at the [petitioner] to let her leave. The [petitioner] told the victim she could get into a nearby dumpster or run. As the victim attempted to run, the [petitioner] shot her in the side of the stomach. The victim continued her attempt to run away, followed by Hampton, who now had the shotgun. The [petitioner] pursued the victim in the car

and blocked her path. Hampton shot the victim again. He and the [petitioner] then left the scene. Shortly thereafter, the [petitioner] and Hampton returned briefly and then left the area again. The victim dragged herself to the street, where she was found by a passing driver. The police and paramedics were summoned, and the victim was taken to Hartford Hospital for treatment.' . . .

"In 2010, the petitioner filed a petition for a writ of habeas corpus. By way of an amended petition, filed on June 11, 2012, the petitioner alleged that his trial counsel (Kirstin B. Coffin, Ramona Mercado Espinoza, and David Thompson) had performed deficiently in a variety of different ways and that there was a reasonable probability that, but for such deficient performance, the outcome of his trial would have been different. In his prayer for relief, the petitioner requested, inter alia, that the habeas court vacate his conviction and grant him a new trial. On August 1, 2013, the court issued a memorandum of decision in which it addressed the petitioner's claims concerning ineffective representation in four areas: (1) advising the petitioner relative to the state's plea offer, (2) conducting pretrial investigation, (3) examining witnesses and objecting to evidence, and (4) presenting closing argument. The court denied the amended petition." (Footnote in original.) *Mitchell* v. *Commissioner of Correction*, 156 Conn. App. 402, 404–407, 114 A.3d 168, cert. denied, 317 Conn. 904, 114 A.3d 1220 (2015). This court affirmed the judgment of the habeas court.[2] Id., 421.

---

[2] While his direct appeal was pending and prior to filing his first habeas action in 2010, the petitioner filed, on February 22, 2006, a petition for a new trial. In his petition for a new trial, "the petitioner alleged that there was newly discovered evidence in the form of (1) technological improvements to the security camera videotape that had been shown to the jury, which made clear that, contrary to the state's claim at trial, it was the vehicle's passenger (Hampton), not the driver (the petitioner), who exited the vehicle to approach the victim's body, and (2) significant impeachment evidence bearing on the credibility of [Alfred] Henderson, the lead detective, involving his posttrial arrest for official misconduct in connection with other cases.

The petitioner commenced the present habeas action on March 26, 2014. In his operative sixth amended petition dated November 16, 2021, he alleged that the criminal trial court erred in failing to instruct the jury, in accordance with *State* v. *Salamon*, supra, 287 Conn. 509, that to find him guilty of kidnapping, the jury was required to find that he restrained the victim to a greater extent than necessary to complete the other crimes with which he was charged.[3] The petitioner also alleged that his prior habeas counsel, Dante Gallucci, provided ineffective assistance in several ways. He alleged that Gallucci was ineffective by, inter alia,[4] failing to prove that his criminal trial counsel was ineffective in failing to advise the petitioner that he faced the possibility of being convicted under a *Pinkerton* theory of liability[5]

---

The petition also alleged as other reasonable cause for a new trial that the prosecutor had engaged in misconduct by not disclosing exculpatory evidence relating to the videotape, criminal charges brought against Henderson, and other matters, and by adducing false testimony from the victim." *Mitchell* v. *State*, 338 Conn. 66, 95, 257 A.3d 259 (2021). The trial court denied the petition for a new trial and our Supreme Court affirmed that judgment. Id., 108.

[3] In *Salamon*, our Supreme Court held that, in order for a defendant to be convicted of a kidnapping in conjunction with another crime, the jury must be instructed that, "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State* v. *Salamon*, supra, 287 Conn. 542. In *Luurstema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011), our Supreme Court held that those who were convicted prior to *Salamon* were entitled to its benefit retroactively and to collaterally challenge their convictions. Id., 751.

[4] Although the petitioner alleged other ways in which Gallucci was ineffective, we have referenced only those that he challenges on appeal.

[5] "In *State* v. *Walton*, 227 Conn. 32, 43, 45–46, 630 A.2d 990 (1993), we recognized the principle of vicarious liability that the United States Supreme Court articulated in *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), under which conspirators may be held liable for criminal offenses committed by their coconspirators that are (1) within the scope of the conspiracy, (2) in furtherance of it, and (3) reasonably foreseeable as a necessary or natural consequence of the conspiracy." *Mitchell* v. *State*, supra, 338 Conn. 94 n.20.

and failing to allege that his criminal trial counsel should have pursued a *Brady*[6] claim pertaining to allegedly exculpatory testimony of an expert witness consulted by the state to review a video recording of events that occurred on the night in question.

On January 25, 2022, the court, *Oliver, J.*, granted the respondent's motion for summary judgment on the petitioner's claim that he had been entitled to an incidental restraint instruction on his kidnapping charge in accordance with *Salamon*. The court agreed that the petitioner was entitled to such an instruction, but concluded that the failure to give such an instruction was harmless. The court explained: "[T]he state has carried its burden of proving that the trial court's failure to provide an incidental restraint instruction did not have a substantial and injurious effect or influence on the jury's determination as to whether the petitioner's restraint of the victim was incidental or necessary to commit the sexual assault and attempted murder. The evidence before the jury indicated that the petitioner drove around Hartford and East Hartford with the victim for a substantial duration of time before the subsequent crimes occurred, during which time he became violent with her, threw a cell phone at her, pulled her by the hair and locked the doors when she attempted to exit the vehicle.

---

[6] "In *Brady* [v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)], the United States Supreme Court held that [t]he defendant has a right to the disclosure of exculpatory evidence under the due process [clause] of . . . [the fourteenth amendment to] the United States constitution . . . . In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material. . . . Whether the [defendant] was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." (Citations omitted; internal quotation marks omitted.) *State* v. *Andres C.*, 349 Conn. 300, 329–30, 315 A.3d 1014, cert. denied,    U.S.   ,    S. Ct.   ,    L. Ed. 2d    (2024).

"The application of the *Salamon* factors to the present case clearly tip in the respondent's favor. The petitioner confined the victim in a moving vehicle for a lengthy period of time and did not only restrain her movement during the commission of the sexual assault and attempted murder. Nor was the confinement that occurred inherent in the nature of those crimes. Furthermore, the petitioner's restraint of the victim prevented her from summoning assistance and increased her risk of harm independent of that posed by the separate offenses. . . .

"The court finds that, pursuant to the record, it is evident that the petitioner intended to prevent the victim's liberation for a longer period of time or to a greater degree than that necessary to commit the subsequent crimes. As a result, the court finds that the trial court's failure to give a *Salamon* instruction in the petitioner's case constitutes harmless error, and the respondent is entitled to judgment as a matter of law as to this claim. . . ." (Citations omitted.)

Thereafter, the court, *Newson, J.*, held a trial on the petitioner's claims of ineffective assistance of Gallucci. The trial lasted four days, at which the petitioner presented seven witnesses: Gallucci; Lindsay Hawk, who was consulted by the state to compile video evidence into a format that could be presented to the jury; the victim's mother; Sandra Tullius, who prosecuted the petitioner and Hampton; Kirstin Coffin, who was one of two attorneys who represented the petitioner at his criminal trial; and Frank Riccio, as a legal expert. The petitioner also testified on his own behalf. The petitioner also submitted fifty-one exhibits.

On March 15, 2023, the habeas court filed a memorandum of decision wherein it rejected all of the petitioner's claims and denied his petition for a writ of habeas corpus. As to the petitioner's claim that Gallucci was

ineffective in failing to prove that his criminal trial counsel was ineffective in failing to advise the petitioner that he faced the possibility of being convicted under a *Pinkerton* theory of liability, and that if he had been so advised, he would have accepted a plea deal, the court credited Gallucci's testimony that he did not pursue such a claim because it was obvious to him that the petitioner never wanted to take a plea deal. The court noted that the petitioner, many years after the fact, has maintained his innocence of the crimes of which he was convicted. Additionally, the court found not credible the petitioner's testimony that his criminal trial counsel did not advise him of the various theories of liability under which he could be convicted. The court further noted that the petitioner failed to present evidence that the state would have offered him another plea deal.[7] The court thus concluded that the petitioner failed to prove that Gallucci's representation of him on this issue was deficient or that he was prejudiced by any alleged deficient performance.

As to the petitioner's claim that Gallucci was ineffective in failing to prove that the state violated his constitutional right to due process by failing to disclose " 'an adverse opinion by the video expert, [Hawk], that the video footage did not corroborate the state's theory of the case and the [victim's] testimony,' "[8] the court

---

[7] On December 14, 2004, the petitioner entered a guilty plea pursuant to the *Alford* doctrine, which he withdrew on March 21, 2005. See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[8] The habeas court explained: "[S]ome parts of the incident [at issue in this case] were captured on [nearby] security surveillance cameras . . . . Due to there being multiple cameras, multiple angles, videos from different businesses and some issues with proprietary software, the state engaged . . . Hawk to put the original 'raw' into some consolidated and useable format for the jury. Hawk indicates [that] she was given a general verbal summary of what was alleged to have occurred according to witness statements but did not actually review any of those statements. The petitioner claims that she advised the state that the videos did not support the claims being made but the state withheld that information."

reasoned that assuming, without deciding, that an opinion had been rendered to the state that should have been disclosed pursuant to *Brady*, that opinion would have made no difference in the outcome of the petitioner's criminal trial.[9] The court explained: "The issue so heavily relied on by the petitioner—whether his vehicle came back to the scene—happened *after* all of the crimes alleged had been completed. That's important because the petitioner's own statement to the police and the testimony he provided in his own defense *corroborated* the entire course of events alleged by the state and testified to by the victim, *except* for the fact that he denied driving back to the scene after the shooting. The petitioner admitted picking the victim up; admitted to driving her around with [Hampton] in the car; admitted that they stopped and got pizza and, for a short time, lost track of the victim, before seeing her again; admitted that they drove to [the petitioner's] house for a short stop; admitted that they drove and parked in the area where the sexual assault occurred; admitted [that], after the first shot occurred, the victim tried to run across the street towards the gas station; admitted that he then got into the car and drove down the street as [Hampton] continued to chase the victim, although he claimed he was trying to stop him; and admitted that [Hampton] caught up to the victim and shot her additional times. So, for all the times relevant to when substantive criminal offenses were alleged to have been committed, the petitioner's own testimony puts him there, meaning the jury only had to determine whether he was an innocent bystander or whether there was proof beyond a reasonable doubt that he was a

---

[9] Specifically, the petitioner claims that Hawk opined that the video did not show that the petitioner returned to the scene after the shooting of the victim. We note that the video in question was played for the jury at the petitioner's criminal trial. At oral argument before this court, counsel for the petitioner acknowledged that whether certain evidence corroborates other evidence is a question for the jury, not an expert witness.

participant. The statement allegedly made [by the petitioner and depicted in the video recording], 'Yeah, she's dead' [may] have had some importance for the mindset of whichever defendant stated it, but it was otherwise immaterial to the substantive crimes. Under those circumstances, whether an expert could offer an opinion contradicting testimony that the victim, after being shot three to four times with a shotgun, claims the vehicle returned to the scene is immaterial.

"Additionally, [Hawk's] opinion is directly contradicted by the testimony of two eyewitnesses. Charles Oliver, a security guard on duty at a nearby building, witnessed a portion of the shooting and the victim being chased, and saw the [petitioner's] vehicle leave and then return near the location where he'd seen the victim had collapsed. Joshua Maize, another security guard, also witnessed a portion of the shooting and the [petitioner's] vehicle leaving and then returning to the scene. In light of the two eyewitnesses, as well as the totality of the evidence, there is no reasonable probability that the third-party opinion offered by [Hawk] would have had any impact at all on the outcome of the trial. Therefore, even if [Hawk] did offer an opinion, and, even if that opinion should have been disclosed, there was no due process violation, because the information was not material. . . . It follows that the petitioner cannot meet his burden of proving that he was prejudiced by [Gallucci] not pursuing this claim, because there is no reasonable probability that the information would have resulted in a different outcome in his habeas proceeding." (Citation omitted; emphasis in original; footnotes omitted.)

The court thereafter denied the petitioner's petition for certification to appeal and this appeal followed.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate

review . . . only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden,* 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If this burden is not satisfied, then the claim that the judgment of the habeas court should be reversed does not qualify for consideration by this court." (Internal quotation marks omitted.) *Bennett* v. *Commissioner of Correction*, 222 Conn. App. 689, 691, 306 A.3d 1195 (2023), cert. denied, 348 Conn. 948, 308 A.3d 37 (2024).

On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal. He also claims that his right to due process was violated in that he was denied a full and fair hearing in the habeas court. He contends that "[t]he manner in which the petitioner's habeas corpus proceeding was heard denied the petitioner the 'opportunity to be heard . . . in a meaningful manner.' " Specifically, he argues that the habeas court prejudged certain of his claims, denied him the opportunity to be heard with a pretrial or posttrial brief, made numerous evidentiary rulings that prevented him from proving his claims and "expressed distaste for the petitioner's claims with such

force in its memorandum of decision that the fundamental fairness of the habeas proceeding has been undermined."

The petitioner also claims that the habeas court erred in granting summary judgment in favor of the respondent on his claim that he was entitled to an incidental restraint instruction on his kidnapping charge. He also claims that the habeas court erred in rejecting his claims that Gallucci rendered ineffective assistance of counsel in failing to pursue in his first habeas action the claim that his criminal trial counsel provided ineffective assistance in failing to advise him that he could be convicted of the crimes with which he had been charged under *Pinkerton* and in failing to raise a *Brady* claim as to Hawk's opinion pertaining to the video of the night in question.[10]

We have thoroughly reviewed the record in this case and the relevant legal principles and, on the basis of that review, we conclude that the claims raised on appeal lack merit. We further conclude that there is nothing in the record to suggest that the habeas court's findings and conclusions are debatable among jurists of reason, that a court could have resolved the petitioner's claims in a different manner, or that there are any questions that deserve further proceedings. Accordingly, the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal.

The appeal is dismissed.

---

[10] The petitioner also claims that "[t]he habeas court erred in concluding that the petitioner could not prevail on claims that Gallucci was not asked about"; "[h]abeas counsel was ineffective for narrowing his focus about what claims could be raised in the habeas petition"; and "[h]abeas counsel's decision to bifurcate the petitioner's ineffective assistance claims from the other available claim was objectively unreasonable and prejudicial." As briefed, we cannot ascertain the distinct claims of error being asserted by the petitioner. We therefore decline to review them.